# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JAMES BLOCKER AND JAMI BLOCKER, husband and wife, et al., | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | )    Case No. CIV-17-248-G<br>) |
| CONOCOPHILLIPS COMPANY, | )<br>) |
| Defendant. | ) |

## OPINION AND ORDER

This matter comes before the Court on Plaintiffs' Motion for Partial Summary Judgment (Doc. No. 125) filed pursuant to Rule 56 of the Federal Rules of Civil Procedure. In their Motion, Plaintiffs seek summary adjudication of their claims of negligence *per se* and public nuisance *per se*, as well as certain affirmative defenses. The Motion is fully briefed and ready for disposition. *See* Def.'s Resp. (Doc. No. 159); Pls.' Reply (Doc. No. 179).

## STANDARD OF DECISION

Summary judgment is a means of testing in advance of trial whether the available evidence would permit a reasonable jury to find in favor of the party asserting a claim. The Court must grant summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). "An issue of fact is 'material' if under the substantive law it is essential

to the proper disposition of the claim." *Id.* The Tenth Circuit requires that the moving party show "beyond a reasonable doubt that it is entitled to summary judgment." *Pelt v. Utah*, 539 F.3d 1271, 1280 (10th Cir. 2008) (internal quotation marks omitted).

A party that moves for summary judgment has the burden of showing that the undisputed material facts require judgment as a matter of law in its favor. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "When the moving party does not have the ultimate burden of persuasion at trial, it has both the initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is appropriate as a matter of law." *Pelt*, 539 F.3d at 1280. The movant can satisfy its initial burden by producing "affirmative evidence negating an essential element of the non-moving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial." *Id.* (internal quotation marks omitted). If the movant carries this initial burden, the nonmovant must then "go beyond the pleadings and designate specific facts" that would be admissible in evidence in the event of trial "so as to make a showing sufficient to establish the existence of an element essential to that party's case in order to survive summary judgment." *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006); *see* Fed. R. Civ. P. 56(c)(1)(A). The Court must then determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986).

Parties may establish the existence or nonexistence of a material disputed fact by:
- citing to "depositions, documents, electronically stored information,

> affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" in the record; or
>
> - demonstrating "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

Fed. R. Civ. P. 56(c)(1)(A)-(B). While the Court views the evidence and the inferences drawn from the record in the light most favorable to the nonmoving party, *see Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. PepsiCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005), "[t]he mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the [nonmovant]." *Liberty Lobby*, 477 U.S. at 252.

When the moving party has the burden of proof at trial, however, "a more stringent summary judgment standard applies." *Pelt*, 539 F.3d at 1280. The moving party cannot carry its burden by "pointing to parts of the record that [the movant] believes illustrate the absence of a genuine issue of material fact." *Id.* Rather, to obtain summary judgment on its own claim or defense, a movant "must establish, as a matter of law, all essential elements of the issue before the nonmovant can be obligated to bring forward any specific facts alleged to rebut the movant's case." *Id.* Thus, if a party who would bear the burden of persuasion at trial lacks sufficient evidence on an essential element of a claim or defense, all other factual issues concerning the claim or defense become immaterial. *See Celotex*, 477 U.S. at 322; *Adler*, 144 F.3d at 670.

3

# UNDISPUTED FACTS[1]

Beginning in 1935, Continental Oil Company ("Continental")—predecessor of Defendant—drilled 16 wells pursuant to an oil and gas lease (the "Young Lease") covering 160 acres of land in northwest Oklahoma City.[2] Pls.' Mot. ¶¶ 1-2; Def.'s Resp. ¶¶ 1-2.[3] Continental's production of the wells occurred between 1935 and 1966. Pls.' Mot. ¶ 4; Def.'s Resp. ¶ 4. Eight of the wells were drilled on the eastern half of the Young Lease, which is the area that now constitutes the Clifford Farms subdivision. Pls.' Mot. ¶ 3; Def.'s Resp. ¶ 3. Incident to the oil production, the Young Lease wells generated "produced water" that contained roughly 217,000 parts per million (ppm) salt. Pls.' Mot. ¶¶ 5-6; Def.'s Resp. ¶¶ 5-6. The parties agree that, because of its high salinity, produced water can be detrimental to groundwater systems. Pls.' Mot. ¶ 7; Def.'s Resp. ¶ 7. The parties dispute, however, how and where Continental stored the produced water, whether the produced water leaked or otherwise escaped onto the surface of the property, whether the surface soils and water beneath Clifford Farms are now contaminated with elevated levels of saline, chlorides, uranium, and other constituents, and, if so, whether Continental's

---

[1] Facts relied upon are uncontroverted or, where genuinely disputed, identified as such and viewed in the light most favorable to Defendant.

[2] In their briefs, the parties refer to Continental and ConocoPhillips Company collectively as "COP" or "Defendant."

[3] In citing to depositions, the Court uses the page and line numbers as they appear on the original transcripts. For all other documents filed by the parties, the Court uses ECF page numbers.

production and processing of oil was the cause of the contamination.  Pls.' Mot. ¶¶ 8-21; Def.'s Resp. ¶¶ 8-21.

In 2017, Clifford Farms residents submitted a Water Assessment District Petition to the City of Oklahoma City, which passed a Joint Resolution to create a Water Improvement District for Clifford Farms.  Pls.' Mot. ¶ 22; Def.'s Resp. ¶ 22.  Plaintiffs who currently own properties within the Clifford Farms subdivision were assessed the costs associated with bringing municipal water into the neighborhood.  These Plaintiffs also incurred costs, fees, and other expenses to connect their homes to municipal water.  Pls.' Mot. ¶¶ 23-24; Def.'s Resp. ¶¶ 23-24.

## DISCUSSION

Plaintiffs seek summary judgment on their claims of negligence per se and public nuisance per se, as well as certain affirmative defenses.  *See* Pls.' Mot. at 6.

### I.  *Negligence Per Se*

Plaintiffs first contend that they are entitled to summary judgment on their claim of negligence per se.  Plaintiffs rely on a statute that provides:[4]

> No inflammable product from any oil or gas well shall be permitted to run into any tank, pool or stream used for watering stock; and all waste of oil and refuse from tanks or wells shall be drained into proper receptacles at a safe distance from the tanks, wells or buildings, and be immediately burned or transported from the premises, and in no case shall it be permitted to flow over the land.  Salt water shall not be allowed to flow over the surface of the land.

---

[4] Although its numbering has changed, the provision's statutory language has not been amended since its original enactment in 1910.

5

Okla. Stat. tit. 52, § 296; *see also Texas Co. v. Mosshamer*, 51 P.2d 757, 758 (Okla. 1935).

Under Oklahoma law, a plaintiff seeking to establish negligence per se must demonstrate that "the claimed injury (a) was caused by the law's violation," that the claimed injury "(b) was of the type intended to be prevented by the statute," and "(c) the injured party was a member of the class meant to be protected by the statute." *Lockhart v. Loosen*, 943 P.2d 1074, 1078 (Okla. 1997); *see Howard v. Zimmer, Inc.*, 299 P.3d 463, 467 (Okla. 2013); *Hamilton v. Allen*, 852 P.2d 697, 699 (Okla. 1993).

Plaintiffs base their claim of negligence per se on the following facts, which they primarily support by citation to deposition testimony:

- "Produced water was collected in pits/ponds during [Defendant's] operations on the Young Lease." Pls.' Mot. ¶ 9.

- "Water escaped from pits/ponds on the Young lease during [Defendant's] operations." *Id.* ¶ 11.

- "Produced water was transported across the Young Lease in pipelines during [Defendant's] operations." *Id.* ¶ 12.

- "Produced water leaked and escaped from pipelines across the Young Lease during [Defendant's] operations." *Id.* ¶ 13.

- "Any saltwater that escaped flowed across the surface of the Young Lease during [Defendant's] operations." *Id.* ¶ 14.

- "Salt scars are visible on the Young Lease in aerial photographs dated 1941, 1951 and 1963." *Id.* ¶ 15.

- "[Defendant's] operations impacted the surface of the Neighborhood." *Id.* ¶ 16.

- "The surface soils in the Neighborhood are impacted from salts." *Id.* ¶ 17.

  -and-

- "High salinity levels correspond to salt scars in historical aerial photographs." *Id.* ¶ 18; *see id.* at 16-17.

Defendant objects that Plaintiffs have failed to establish that the statute imposes a duty between historic operators and future property owners. *See* Def.'s Resp. at 22-25. Defendant also argues that the existence of material factual disputes regarding causation precludes summary judgment on this claim. *See id.* at 25-29. Specifically, Defendant contends that the testimony cited by Plaintiffs to support their relevant factual statements is conditional, rendering the statements insufficient to establish the absence of a genuine issue of fact. *See id.* at 26-27; *see also* Fed. R. Civ. P. 56(c)(1)(B).

The Court agrees that the evidence presented in support of factual assertions essential to the proper disposition of Plaintiff's negligence per se claim is insufficient to establish the absence of a material factual dispute.

    a. <u>Fact Statement No. 11: Water escaped from pits/ponds on the Young Lease during Defendant's operations.</u>

In support of their factual assertion that "[w]ater escaped from pits/ponds on the Young Lease during [Defendant's] operations," Plaintiffs submit excerpts from the deposition testimony of Patricia Clark Billingsley of the Oklahoma Corporation Commission, Defendant's corporate representative Mark Aebi, and petroleum engineer expert Robert A. Campbell. *See* Pls.' Mot. ¶ 11.

In the cited portions of Billingsley's deposition, Billingsley testified that, while it "look[ed]" as though there had been "spills from some source," she did not know the source. *See id.* Ex. 6 (Doc. No. 125-6) at 78:9-13, 93:7-13. While portions of the

deposition do support Plaintiff's factual contention, *see, e.g.*, *id.* at 100:11-101:21, this testimony is not so definitive as to "rule out the prospect of a finding in favor of [Defendant]." *Hotel 71 Mezz Lender LLC v. Nat. Ret. Fund*, 778 F.3d 593, 601 (7th Cir. 2015).

The cited portions of the Campbell and Aebi depositions are likewise insufficient to preclude a factual dispute as to whether produced water escaped from pits or ponds. *See id.* Ex. 8 (Doc. No. 125-8) at 112:12-21 (Campbell testimony that "these pits were never holding large volumes of saltwater" but that "barrels . . . leak[ed] occasionally"), 116:22-117:7 (discussing barrel valve malfunctions); *id.* Ex. 1 (Doc. No. 125-1) at 113:25-114:17 (Aebi testimony that Defendant had no information about "the potential for any overflow from pits").

> b. <u>Fact Statement No. 13: Produced water leaked and escaped from pipelines across the Young Lease during Defendant's operations.</u>

Similarly, Plaintiffs fail to satisfy their burden in relation to their factual assertion that produced water "leaked and escaped from pipelines across the Young Lease during [Defendant's] operations." Pls.' Mot. ¶ 14. Plaintiffs cite excerpts from the deposition testimony of John Mark Harrington of the Association of Central Oklahoma Governments, corporative representative Aebi, and aerial photo expert Mark S. Gregory.

In Harrington's cited deposition testimony regarding a 1951 aerial photograph of the property at issue, Harrington testified that the photo showed a discharge that he was "assuming [was] saltwater" or something with a high level of total dissolved solids. *Id.* Ex. 7 (Doc. No. 125-7) at 50:3-11. Harrington made additional qualifying statements

8

elsewhere in his deposition, including that he was "*assuming* that long, skinny thing on the aerial photo is a pipeline, and that [he was] looking at salt leaking out of the pipeline." Pls.' Mot. Ex. 7 (Doc. No. 125-7) at 50:18-20 (emphasis added). When asked whether he had any doubt as to whether a 1963 aerial photo of the property showed a "white patch" that was "the result of produced water on the ground," Harrington testified that he thought it "likely, but . . . [he] would like to hear other interpretations to it," adding, "So a hundred percent, 100 percent, I don't think so. I think it is likely." *Id.* at 56:11-57:2.

Similarly, Aebi expressed in his cited testimony that a release of produced water from a pipeline system could "potentially" be a mechanism "for how [the produced water] may have gotten there, if it is there." Pls.' Mot. Ex. 1 (Doc. No. 125-1) at 134:4-20. And when asked whether the white features in a 1954 aerial photograph of the property could have been caused by leaks in a pipeline, Gregory testified that "leaks could cause the death of vegetation next to the pipeline, but [he] wouldn't expect the leak to be in linear fashion along the pipeline." *Id.* Ex. 5 (Doc. No. 125-5) at 66:19-23. These statements fail to foreclose the possibility of a factual dispute.

"Summary judgment in favor of the party with the burden of persuasion . . . is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999); *see also* 10 Charles Alan Wright et al., *Federal Practice and Procedure* § 2725.2 (4th ed. 2008) ("[I]f the evidence presented on the motion is subject to conflicting interpretations, or reasonable people might differ as to its significance, summary judgment is improper."). Here, whether produced water leaked and escaped from pits, ponds, and pipelines across the Young Lease during

9

Continental's operations is "essential to the proper disposition" of Plaintiff's negligence per se claim, as it speaks to the element of causation. Thus, the Court finds that summary judgment on Plaintiffs' negligence per se claim is inappropriate.

## II. Public Nuisance Per Se

Plaintiffs next contend that they are entitled to summary judgment on their claim of public nuisance per se. *See* Pls.' Mot. at 18-27. Plaintiffs assert that a public nuisance claim against a former oil and gas operator may be established "by showing that, during the operations, waste was stored in unlined pits/ponds and permitted to escape from pits, ponds, or pipelines in the soils, where such wastes will eventually 'percolate through the soil and into the groundwater.'" Pls.' Mot. at 23 (alteration omitted) (quoting *Tosco Corp. v. Koch Indus., Inc.*, 216 F.3d 886, 895 (10th Cir. 2000)). Plaintiffs then contend that such a claim is supported by Plaintiffs' evidence that Defendant "stor[ed] produced water in unlined pits and ponds," *id.* at 24 (citing *id.* ¶¶ 1-4, 9-10), and "permitted produced water to escape from pits, ponds, and pipelines on the Young Lease during its operations," *id.* (citing *id.* ¶¶ 11, 13).

The Court has already determined that the evidence cited in support of Plaintiffs' Fact Statements Nos. 11 and 13 regarding the escape of produced water from pits, ponds, and/or pipelines on the Young Lease is not so conclusive as to rule out the prospect that a reasonable jury might find in favor of Defendant on a negligence per se claim. *See supra* Part I. Similar deficiencies exist as to the evidence proffered in support of Plaintiffs' Fact Statement No. 10 that "[t]he pits/ponds used to collect produced water during [Continental]'s operations were unlined." *Id.* ¶ 10. Plaintiffs cite an excerpt of

10

Harrington's deposition testimony in which Harrington opines that "because of the fact that there was probably no regulation regarding [the pits] to be lined or unlined," his "assumption would be that they [were] unlined." *Id.* Ex. 7 (Doc. No. 125-7) at 80:9-10, 90:16-24. Plaintiffs also cite Aebi's deposition testimony in which he expressed uncertainty as to whether lining was used and what type of lining might have been used. *Id.* Ex. 1 (Doc. No. 125-1) at 71:19-24; Def.'s Resp. Ex. 3 (Doc. No. 159-3) at 153:3-13. Finally, Plaintiffs cite Campbell's deposition testimony that there was a "large southern earthen pit" on the Young Lease; but Campbell goes on to say that he believed it contained oil, rather than produced water. Pls.' Mot. Ex. 8 (Doc. No. 125-8) at 47:7-20.

This evidentiary support falls short of the standard for summary judgment that must be met by a party who bears the burden of persuasion at trial. Because the evidence presented "is susceptible of different interpretations or inferences by the trier of fact," summary judgment is inappropriate on this claim. *Hunt*, 526 U.S. at 553.

  III. *Affirmative Defenses*

Plaintiffs additionally seek summary adjudication of certain of Defendant's affirmative defenses to Plaintiffs' public nuisance cause of action.

    a. <u>Defendant's Affirmative Defense No. 2: Statute of Limitations and Repose</u>

Plaintiffs argue that the statute of limitations defense is inapplicable to claims arising out of a public nuisance. *See* Pls.' Mot. at 27-28. Plaintiffs cite *Fischer v. Atlantic Richfield Co.*, 774 F. Supp. 616 (W.D. Okla. 1989), in which this Court held that "the statute of limitations does not run against a public nuisance." *Id.* at 619 (citing Okla. Stat. tit. 50, § 7). Defendant does not challenge this authority but, rather, attacks the merits of

Plaintiffs' underlying public nuisance claim. *See* Def.'s Resp. at 35.

In *Tosco Corp.*, 216 F.3d 886, the Tenth Circuit considered this Court's finding in *Fischer* that under title 50, section 7 of the Oklahoma Statutes, the statute of limitations does not run against a public nuisance claim. *See id.* at 895. The Tenth Circuit found "no reason to reject this existing interpretation of Oklahoma law." *Id.* Based on the Tenth Circuit's reasoning, this Court finds that, to the extent that Plaintiffs' public nuisance claim proceeds and Plaintiffs' damages are determined to have arisen out of the existence of a public nuisance, the statute of limitations would not bar Plaintiffs' recovery. *See Ponca Tribe of Indians of Okla. v. Cont'l Carbon Co.*, No. CIV-05-445-C, 2008 WL 11338469, at *3 (W.D. Okla. Nov. 21, 2008).

Summary judgment is therefore granted in favor of Plaintiffs on Defendant's statute of limitations defense to Plaintiffs' public nuisance claim.

b. <u>Defendant's Affirmative Defense No. 9: Coming to the Nuisance</u>

Plaintiffs again cite this Court's holding in *Fischer* for the proposition that "the 'coming to the nuisance' doctrine is inapplicable" to public nuisance claims. *Fischer*, 774 F. Supp. at 620 (citing 66 C.J.S. *Nuisance* § 92) (explaining that "[t]here is no such thing as a prescriptive right to maintain a public nuisance"); *see* Pls.' Mot. at 28.

Defendant does not dispute this authority but again attacks the merits of the public nuisance claim. *See* Def.'s Resp. at 35. Having found no countervailing authority on Oklahoma's position on this issue, the Court adheres to the finding in *Fischer* that the coming-to-the-nuisance doctrine is inapplicable to public nuisance claims. Summary judgment is therefore granted in favor of Plaintiffs on Defendant's coming-to-the-nuisance

defense to Plaintiffs' public nuisance claim.

      c. <u>Defendant's Affirmative Defenses Nos. 5, 12: Contribution</u>

In its Defense No. 5, Defendant asserts that any damages Plaintiffs incurred were the result of third-party acts or omissions. *See* Answer (Doc. No. 24) at 7. In its Defense No. 12, Defendant asserts that Plaintiffs were contributorily negligent for failing to abate the alleged continuing nuisance as successive owners. *See id.* at 8-9 (citing Okla. Stat. tit. 50, § 5 ("Every successive owner of property who neglects to abate a continuing nuisance upon, or in the use of such property, created by a former owner, is liable therefor in the same manner as the one who first created it.")).

Plaintiffs seek summary judgment that these contribution defenses do not apply to their public nuisance claims. Plaintiffs argue that "any alleged contribution of others to [water pollution] is not a defense" because "a party who contributed to [this] single, individual injury . . . may be held liable for the entire result." Pls.' Mot. at 28; *see also* Pls.' Reply at 11 ("Contribution is not an affirmative defense. Plaintiffs are under no affirmative obligation to 'disprove' the contribution of any other non-party . . . .").

The Court agrees with Plaintiffs that Oklahoma decisional law, based on the principle of joint liability for tort claims involving injury to property, permits Defendant—if shown to have contributed to the alleged public nuisance—to be held liable for the totality of the injury shown to arise from the nuisance. *See Union Tex. Petroleum Corp. v. Jackson*, 909 P.2d 131, 141 (Okla. Civ. App. 1995); *Texas Co. v. Taylor*, 61 P.2d 574, 576

(Okla. 1936).[5] Summary judgment is therefore granted in favor of Plaintiffs on Defendant's defenses of third-party contribution and contributory negligence, as asserted against Plaintiffs' public nuisance claims.

IV.   *Rule 56(g) Request*

Rule 56(g) of the Federal Rules of Civil Procedure provides that "[i]f the court does not grant all the relief requested by the motion, it may enter an order stating any material fact—including an item of damages or other relief—that is not genuinely in dispute." Fed. R. Civ. P. 56(g). Plaintiffs broadly request an order under Rule 56(g) stating that "all undisputed material facts set forth [in their Motion] are to be treated as established for all purposes in [the] case." Pls.' Mot. at 29. The Court declines to do so. *See* Fed. R. Civ. P. 56(g) advisory committee's note to 2010 amendment ("Even if the court believes that a fact is not genuinely in dispute it may refrain from ordering that the fact be treated as established."); 10 Charles Alan Wright et al., *supra*, § 2737 ("The question whether to exercise [the] authority [to establish undisputed facts under Rule 56(g)] is within the court's discretion."). Significant genuine disputes remain as to the material facts set forth in Plaintiffs' Motion, as illustrated in Defendant's response to Plaintiff's material fact statements. *See* Def's Resp. at 9-19, 37.

## CONCLUSION

As outlined herein, Plaintiffs' Motion for Partial Summary Judgment (Doc. No.

---

[5] Neither party contends in their summary judgment briefing that title 23, section 15 of the Oklahoma Statutes applies in a way that would affect this analysis.

14

125) is GRANTED in part and DENIED in part. The Court grants summary judgment in favor of Plaintiffs on Defendant's statute-of-limitations, coming-to-the-nuisance, third-party contribution, and contributory negligence defenses to Plaintiffs' public nuisance claims. The Motion is denied in all other respects.

IT IS SO ORDERED this 6th day of May, 2019.

_____
CHARLES B. GOODWIN
United States District Judge