UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JAMES BLOCKER AND JAMI BLOCKER, husband and wife, et al., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) Case No. CIV-17-248-G |
| CONOCOPHILLIPS COMPANY, | ) ) ) |
| Defendant. | ) |

## OPINION AND ORDER

This matter comes before the Court on Defendant ConocoPhillips Company's Motion for Partial Summary Judgment (Doc. No. 131) filed pursuant to Rule 56 of the Federal Rules of Civil Procedure. In its Motion, Defendant seeks summary adjudication of Plaintiffs' claims of private nuisance, public nuisance, negligence, and unjust enrichment, as well as certain affirmative defenses. The Motion is fully briefed and ready for disposition. *See* Pls.' Resp. (Doc. No. 158); Def.'s Reply (Doc. No. 180).

STANDARD OF DECISION

Summary judgment is a means of testing in advance of trial whether the available evidence would permit a reasonable jury to find in favor of the party asserting a claim. The Court must grant summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). "An issue of fact is 'material' if under the substantive law it is essential

to the proper disposition of the claim." *Id.* The Tenth Circuit requires that the moving party show "beyond a reasonable doubt that it is entitled to summary judgment." *Pelt v. Utah*, 539 F.3d 1271, 1280 (10th Cir. 2008) (internal quotation marks omitted).

A party that moves for summary judgment has the burden of showing that the undisputed material facts require judgment as a matter of law in its favor. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "When the moving party does not have the ultimate burden of persuasion at trial, it has both the initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is appropriate as a matter of law." *Pelt*, 539 F.3d at 1280. The movant can satisfy its initial burden by producing "affirmative evidence negating an essential element of the non-moving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial." *Id.* (internal quotation marks omitted). If the movant carries this initial burden, the nonmovant must then "go beyond the pleadings and designate specific facts" that would be admissible in evidence in the event of trial "so as to make a showing sufficient to establish the existence of an element essential to that party's case in order to survive summary judgment." *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006); *see* Fed. R. Civ. P. 56(c)(1)(A). The Court must then determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986).

Parties may establish the existence or nonexistence of a material disputed fact by:
- citing to "depositions, documents, electronically stored information,

> affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" in the record; or
>
> - demonstrating "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

Fed. R. Civ. P. 56(c)(1)(A)-(B). While the Court views the evidence and the inferences drawn from the record in the light most favorable to the nonmoving party, *see Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. PepsiCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005), "[t]he mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the [nonmovant]." *Liberty Lobby*, 477 U.S. at 252.

When, however, the moving party has the burden of proof at trial, "a more stringent summary judgment standard applies." *Pelt*, 539 F.3d at 1280. The moving party cannot carry its burden by "pointing to parts of the record that [the movant] believes illustrate the absence of a genuine issue of material fact." *Id.* Rather, to obtain summary judgment on its own claim or defense, a movant "must establish, as a matter of law, all essential elements of the issue before the nonmovant can be obligated to bring forward any specific facts alleged to rebut the movant's case." *Id.* Thus, if a party who would bear the burden of persuasion at trial lacks sufficient evidence on an essential element of a claim or defense, all other factual issues concerning the claim or defense become immaterial. *See Celotex*, 477 U.S. at 322; *Adler*, 144 F.3d at 670.

## UNDISPUTED FACTS[1]

In 1926, James M. Young and Kate L. Young executed an oil and gas lease (the "Young Lease") with Marland Oil Company, which later merged with Continental Oil and Transportation Company. Def.'s Mot. ¶¶ 1-2; Pl.'s Resp. ¶¶ 1-2.[2] Continental, the predecessor of Defendant, drilled eight wells on the Young Lease between 1935 and 1936, five of which were plugged and abandoned between 1947 and 1958. Def.'s Mot. ¶¶ 2, 3; Pl.'s Resp. ¶¶ 2, 3. Continental owned and operated the Young Lease until December 1966, when it conveyed its rights under the Young Lease to Clinton Oil Company. Def.'s Mot. ¶ 3; Pl.'s Resp. ¶ 3. Oil and gas operations continued under the Young Lease after Continental sold it, with the last wells being plugged in 1991. Def.'s Mot. ¶ 6; Pl.'s Resp. ¶ 6.

Around 2002, the owner of the surface estate for the area covered by the Young Lease decided to develop a housing addition on his property. Def.'s Mot. ¶ 9; Pl.'s Resp. ¶ 9. The addition is now known as Clifford Farms.

In 2010, a Clifford Farms homeowner made, for the first time, an official complaint regarding domestic well water on the property, raising the issue with the Oklahoma Corporation Commission ("OCC"). Def.'s Mot. ¶ 11; Pl.'s Resp. ¶ 11. The OCC opened an investigation into the soil and groundwater at Clifford Farms and tested certain water

---

[1] Facts relied upon are uncontroverted or, where genuinely disputed, identified as such and viewed in the light most favorable to Plaintiffs.

[2] In citing to depositions, the Court uses the page and line numbers as they appear on the original transcripts. For all other documents filed by the parties, the Court uses ECF page numbers.

wells in response to the property owner's complaint. Def.'s Mot. ¶ 12; Pl.'s Resp. ¶ 12. The OCC eventually recommended that the water well of the property owner who had issued the complaint be plugged and that the property owner and some neighboring residents be connected to municipal water. Def.'s Mot. ¶¶ 15-16; Pl.'s Resp. ¶¶ 15-16. In 2012, the Homeowners Association for Clifford Farms informed residents that the OCC was offering to test all water wells in the neighborhood at no cost to determine baseline water quality. Def.'s Mot. ¶ 20; Pl.'s Resp. ¶ 20. The HOA declined the OCC's offer to be involved in testing Clifford Farms' water wells. Def.'s Mot. ¶ 23; Pl.'s Resp. ¶ 23.

After collecting enough signatures from Clifford Farms property owners in March 2016, a water assessment district petition was submitted to the City of Oklahoma City in Fall 2016 to obtain city water. After completion of the water line, an assessment to the Clifford Farms property owners was made, totaling $445,554.40 and resulting in a per capita charge of $9,901.21. Def.'s Mot. ¶¶ 38-39; Pl.'s Resp. ¶¶ 38-39. Of the 33 Plaintiffs, only five Plaintiffs' homes are not known to be on the city water line at this time. Def.'s Mot. ¶ 40; Pl.'s Resp. ¶ 40.

## ANALYSIS

### I. *Plaintiff's Nuisance Claims*

Plaintiffs raise both private nuisance and public nuisance causes of action against Defendant and predicate these claims on the theories of nuisance per se and nuisance in fact. *See* Second Am. Compl. (Doc. No. 23) at 10-12.[3] Under Oklahoma law, as relevant

---

[3] "A nuisance *per se* is 'an act, occupation or structure which is a nuisance at all times and under any circumstances, regardless of location or surroundings.'" *Oklahoma v. Tyson*

5

here, "a nuisance [public or private] consists in unlawfully doing an act, or omitting to perform a duty, which act or omission either" "[a]nnoys, injures or endangers the comfort, repose, health, or safety of others" or "[i]n any way renders other persons insecure in life, or in the use of property." Okla. Stat. tit. 50, § 1. A public nuisance is "one which affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon the individuals may be unequal." *Id.* § 2. A private nuisance is "[e]very nuisance not included in the definition of" public nuisance. *Id.* § 3.

   a. Private Nuisance

Defendant argues that, even assuming it created a nuisance for successive property owners to abate, Plaintiffs nonetheless cannot establish a private nuisance claim as a matter of law because (1) Oklahoma law does not support private nuisance claims by a purchaser of real property against a former lessee for conditions existing on the land purchased, (2) Plaintiffs came to the alleged nuisance, and (3) Plaintiffs' private nuisance claim is barred by the applicable statute of limitations. *See* Def.'s Mot. at 27-33, 52-54.

Defendant cites *Moore v. Texaco, Inc.*, 244 F.3d 1229, 1232 (10th Cir. 2001), in support of its first argument that, under Oklahoma law, private nuisance claims are reserved for neighboring property owners and cannot be maintained by landowners for nuisances

---

*Foods, Inc.*, No. 05-CV-0329-GKF-PJC, 2010 WL 653032, at *5 (N.D. Okla. Feb. 17, 2010) (quoting *Sharp v. 251st St. Landfill, Inc.*, 810 P.2d 1270, 1276 n.6 (Okla. 1991)). A nuisance in fact (or nuisance *per accidens*) is "an act, occupation or structure, not a nuisance *per se*, but which may become a nuisance by virtue of the circumstances, location or surroundings." *Id.* (alteration and internal quotation marks omitted).

created prior to their ownership. In *Moore*, an oil and gas operator owned land on which it conducted oil field operations that allegedly resulted in groundwater and soil contamination. The operator sold the property to the plaintiff's father, and the plaintiff then acquired the property upon his father's death. *See id.* at 1230-31. The plaintiff brought claims of negligence, trespass, public and private nuisance, abatement, and unjust enrichment. *Id.* at 1230. In affirming this Court's grant of summary judgment in favor of the oil and gas operator, the Tenth Circuit held that the private nuisance claim failed primarily because the plaintiff was "a successor landowner to [the defendant], rather than an adjacent landowner." *Id.* at 1232. While acknowledging that Oklahoma courts had not yet addressed the issue, the Tenth Circuit stated that "[i]t is likely that Oklahoma would reach the same conclusion reached by nearly every other court to consider the issue: that an action for private nuisance is designed to protect neighboring landowners from conflicting uses of property, not successor landowners from conditions on the land they purchased." *Id.*; *see also Bristow First Assembly of God v. BP p.l.c.*, 210 F. Supp. 3d 1284, 1294 (N.D. Okla. 2016) (citing *Moore* in support of dismissal of pollution-based private nuisance claim brought under Oklahoma law by successor landowners against prior landowner/operator); *Lee v. BP P.L.C.*, No. 15-CV-525-TCK-TLW, 2016 WL 5415805, at *7 (N.D. Okla. Sept. 28, 2016) (same); *Lane v. BP p.l.c.*, No. 15-CV-524-TCK-FHM, 2016 WL 5415801, at *7 (N.D. Okla. Sept. 28, 2016) (same).

Plaintiffs object that *Moore* is distinguishable from the present situation because the private nuisance claim in that action was brought against a former landowner, rather than

7

against a former lessee.[4]  *See* Pls.' Resp. at 38-41.  Plaintiffs cite several Oklahoma Supreme Court cases to support their contention.  *See id.* at 40-41 (citing *Briscoe v. Harper Oil Co.*, 702 P.2d 33 (Okla. 1985); *Tenneco Oil Co. v. Allen*, 515 P.2d 1391 (Okla. 1973); *Sunray DX Oil Co. v. Brown*, 477 P.2d 67 (Okla. 1970); *Cities Serv. Oil Co. v. Merritt*, 332 P.2d 677 (Okla. 1958)).  However, each of these cited cases involves a private nuisance action brought by landowners for nuisances caused by operations occurring contemporaneously to their ownership.  Thus, they do not contradict the Tenth Circuit's holding in *Moore*, at least insofar as that holding predicted that Oklahoma would reach the conclusion that private nuisance actions could not be maintained to protect "successor landowners from conditions on the land they purchased." *Moore*, 244 F.3d at 1232.[5]

In considering whether the distinction between former lessee and former landowner is determinative of *Moore*'s applicability to Plaintiffs' private nuisance claim, the Court finds the cases cited in *Moore* instructive.  Specifically, the Tenth Circuit cites *Philadelphia Electric Co. v. Hercules, Inc.*, 762 F.2d 303 (3d Cir. 1985), as illustrative of the "conclusion reached by nearly every other court to consider the issue" and that it believes Oklahoma would likewise reach if confronted with this question.  *Moore*, 244 F.3d at 1232.  In that case, the Third Circuit explained that the historical role of private nuisance law was to

---

[4] Plaintiffs additionally argue that Defendant is essentially asserting the doctrine of *caveat emptor* (i.e., let the buyer beware), which Defendant did not plead as an affirmative defense.  Even assuming Defendant is asserting this doctrine, Plaintiffs present no authority illustrating it operates under Oklahoma law as an affirmative defense that may be waived if not pled pursuant to Rule 8(c)(1) of the Federal Rules of Civil Procedure.

[5] The Court additionally notes that each of these cited cases was issued prior to the Tenth Circuit's consideration of the issue in *Moore*.

8

provide a means of resolving "conflicts between *neighboring*, contemporaneous land uses" and that "[a]ll of the very useful and sophisticated economic analyses of private nuisance remedies published in recent years proceed on the basis that the goal of nuisance law is to achieve efficient and equitable solutions to problems created by *discordant* land uses." *Phila. Elec. Co.*, 762 F.2d at 314. The Court further explained,

> In this light nuisance law can be seen as a complement to zoning regulations, *see* Beuscher & Morrison, *Judicial Zoning Through Recent Nuisance Cases,* 1955 Wis. L. Rev. 440, 452 ("[T]he state in nuisance cases is exercising, through the judicial arm, the same basic power of the sovereign that it exercises through the legislative arm in zoning."), and not as an additional type of consumer protection for purchasers of realty. Neighbors, unlike the purchasers of the land upon which a nuisance exists, have no opportunity to protect themselves through inspection and negotiation.

*Id.*

The Court finds that the same considerations precluding a private nuisance claim against a former property owner, as articulated in *Philadelphia Electric Co.*, would substantially apply to a former lessee. Neither presents the danger of a contemporaneous, discordant use of the land, and the purchasing landowner would, in either case, be protected by the ability to inspect the land prior to purchase. *See id.* Plaintiffs have failed to present convincing authority, and the Court has found none, that would preclude this Court's application of the Tenth Circuit's finding in *Moore* to the facts of this case. Thus, following the Tenth Circuit's prediction that the Oklahoma Supreme Court would find that private nuisance claims are "designed to protect neighboring landowners from conflicting uses of property, not successor landowners from conditions on the land they purchased," *Moore*,

244 F.3d at 1232, the Court finds that Defendant is entitled to judgment as a matter of law on Plaintiffs' private nuisance claim.

### b. Public Nuisance

As noted, Oklahoma defines a public nuisance as a nuisance that "affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon the individuals may be unequal." Okla. Stat. tit. 50, § 2. "A private person may maintain an action for a public nuisance if it is specially injurious to himself but not otherwise." *Id.* § 10. Defendant has moved for summary judgment on Plaintiffs' public nuisance claim on the theories that (1) Plaintiffs have not suffered a special injury and (2) the claim is barred by the applicable statute of limitations.

#### i. *Special Injury*

The Oklahoma Supreme Court has defined "special injury" as an injury "different in kind, not merely degree, from that suffered by the general public from the act complained of." *McKay v. City of Enid*, 109 P. 520, 522 (Okla. 1910); *see also Schlirf v. Loosen*, 232 P.2d 928, 930 (Okla. 1951) (defining special injury as an injury "different in kind from that suffered by the public at large").

Defendant argues that, because Plaintiffs have raised "identical public nuisance claim[s]" based upon "identical facts and alleged damages" of pollution affecting the entire neighborhood, they have not demonstrated that their alleged injuries are different in kind from the injuries of "their neighbors." *See* Def.'s Mot. at 33-36 (internal quotation marks omitted). This argument contemplates the "general public," as articulated in *McKay*, as

10

persons within the Clifford Farms neighborhood. *See id.* at 36; Def.'s Reply at 18 ("Plaintiffs are not asserting injuries to a *subset* of a town, but to their *entire* neighborhood. They do not allege that their injuries extend beyond the boundaries of the neighborhood to the general public . . . ."); Okla. Stat. tit. 50, § 2 (stating that a public nuisance is one which affects an "entire community or neighborhood"). Plaintiffs advocate a different interpretation of "special injury," one which contemplates an injury to them that is different in kind from the injuries suffered by those outside the affected neighborhood—i.e., by the public at large. *See* Pls.' Resp. at 37-38 (arguing that "[t]he special injury rule requires that the injury suffered by a plaintiff be different in kind from the public at large—not an injury that his or her neighbor did not also suffer").

The Court finds it unnecessary to resolve this dispute. Even if the Court were to adopt Defendant's narrower interpretation, the undisputed facts do not show that the alleged nuisance affects only the Clifford Farms surface estate owners who are Plaintiffs in this action. While Plaintiffs allege that contamination has had an impact on the soil and groundwater underneath Clifford Farms, the undisputed facts do not show a total absence of impact on properties surrounding this addition or on the aquifer that lies under, and exceeds the boundaries of, Clifford Farms. And even within the area of the addition, the contamination alleged by Plaintiffs could affect long-term visitors or, for that matter, the holders of mineral estates, whose ability to recover any remaining oil and gas may be rendered more expensive due to preexisting environmental damage.

Aside from loss of property value, Plaintiffs contend—and Defendant does not specifically dispute—that each Clifford Farms homeowner has been "required to pay" a

$9901.21 assessment imposed by the City of Oklahoma City as a result of that entity agreeing to construct and install a municipal water line serving the Clifford Farms area. *See* Pls.' Resp. at 2; Def.'s Reply at 1. This fact is sufficient to show a special injury under title 50, section 10 of the Oklahoma Statutes. *See Tosco Corp. v. Koch Indus., Inc.*, 216 F.3d 886, 895-96 (10th Cir. 2000) (finding that plaintiff had proved special injury by establishing it had borne the cost of investigation and remediation).

Accordingly, Defendant has not shown that it is entitled to summary judgment on Plaintiffs' public nuisance claim based upon the element of special injury.

        *ii.  Statute of Limitations*

Defendant does not distinguish between private and public nuisance in its request for summary adjudication on the basis that the applicable statute of limitations bars Plaintiffs' nuisance claims. See Def.'s Mot. at 52-54. Insofar as Defendant is arguing that Plaintiffs' public nuisance claim is time barred, the Court disagrees. Oklahoma authority dictates that public nuisances are not subject to a limitations period. *See* Okla. Stat. tit. 50, § 7 ("No lapse of time can legalize a public nuisance . . . ."); *Tosco Corp.*, 216 F.3d at 895; *Fischer v. Atl. Richfield Co.*, 774 F. Supp. 616, 619 (W.D. Okla. 1989) (holding that pursuant to title 50, section 7 of the Oklahoma Statutes the statute of limitations does not run against a public nuisance action for pollution of groundwater); *Davis v. Shell Oil Co.*, 795 F. Supp. 381, 385 (W.D. Okla. 1992) (same); *see also Siegenthaler v. Newton*, 50 P.2d 192, 197 (Okla. 1935).

c. Limitation on Nuisance-Related Damages

Defendant also seeks summary judgment that, should it be found liable to Plaintiffs on their nuisance claims, any recovery of monetary damages on those claims may not exceed a sum equal to the lesser of "(a) the diminution in fair market value of their property or (b) the reasonable costs of any repair or restoration of their property." Def.'s Mot. at 12, 36-42. Defendant seeks to preclude the possibility of a "double (or triple) recovery" in the form of remediation, abatement, and recovery for diminution in property value. *Id.* at 37. Plaintiffs object that this issue is "more appropriately addressed through jury instructions." Pls.' Resp. at 42. The Court agrees and reserves its ruling. *See* Fed. R. Civ. P. 56(a).

II. *Plaintiffs' Negligence Claims*

a. Duty to Warn

Plaintiffs allege that Defendant breached both the duty of care and the duty to warn in relation to Defendant's historic oil and gas operations on the Young Lease. *See* Second Am. Compl. ¶¶ 75-81. Though Defendant submits case law addressing the legal standard for the duty of care, *see* Def.'s Mot. at 42-45, Defendant argues only for summary judgment on Plaintiffs' negligence claims predicated on the duty to warn, *see id.* at 46-51. The Court therefore does not consider Plaintiffs' negligence claims based upon the duty of care.

To prevail on a negligence claim, Plaintiffs must show that Defendant owed Plaintiffs a legal duty, Defendant breached that duty, and the breach was the direct or proximate cause of Plaintiffs' injuries. *See Lockhart v. Loosen*, 943 P.2d 1074, 1079 (Okla. 1997). The threshold question for a negligence claim—whether the defendant owed a duty

to the plaintiff—is a question of law for the court. *See Wofford v. E. State Hosp.*, 795 P.2d 516, 519 (Okla. 1990).

Defendant asserts that the Oklahoma statutes do not impose on it a duty to warn and that Defendant complied with all notice requirements arising from OCC rules and regulations. *See* Def.'s Mot. at 46-47. Plaintiffs do not meaningfully contest these points but, instead, respond that their negligence claims are properly based on a common law legal duty that oil and gas operators must warn landowners of pollution caused by their operations.

The cases cited by Plaintiffs, however, are not so clear. *See* Pls.' Resp. at 51-52. In *Gulf Oil Corp. v. McCoy*, 416 P.2d 948 (Okla. 1966), the holders of a surface lease brought a claim for damage to their leasehold estate against an oil company that, in the course of oil recovery operations, had constructed a saltwater disposal pit that overflowed into the leaseholders' stock pond and poisoned their cattle. The Oklahoma Supreme Court stated that the operator's failure to notify the leaseholders of the contamination of the stock pond was a consideration relevant to an award of exemplary damages. *Gulf Oil*, 416 P.2d at 952.

In *Ponca Tribe of Indians of Oklahoma v. Continental Carbon Co.*, No. CIV-05-445-C, 2007 WL 54835 (W.D. Okla. Jan. 8, 2007), this Court found that there was no applicable statutory duty to warn of pollution. *See id.* at *2. Then, while recognizing that Oklahoma decisional law established that "in certain instances the failure to warn may be an act of negligence and give rise to a right of recovery," the Court held that the question of whether a failure to warn of pollution "would fall along a similar vein" need not be decided because in that case no negligence claim had been pled. *Id.*

14

Ultimately, as Plaintiffs have not pointed the Court to Oklahoma authority establishing—through statute or decision—a negligence claim for an oil and gas operator's failure to warn of pollution caused by its operations *that is independent of* a negligence claim for causing the pollution, the Court determines that Defendant is entitled to summary judgment on Plaintiffs' failure to warn claims. This finding shall have no effect on Plaintiffs' negligence claims alleging breach of the duty of care or preclude their presentation of evidence of a failure to warn in support of punitive damages on these negligence claims.

b. Statute of Limitations

Defendant submits that all negligence claims asserted by Plaintiffs are barred by a two-year statute of limitations. *See* Def.'s Mot. at 51-52, 54 (citing Okla. Stat. tit. 12, § 95). "[F]or purposes of [title 12, section 95 of the Oklahoma Statutes], a negligence claim accrues when any injury to the plaintiff, for which an action could proceed, is certain and not merely speculative." *MBA Commercial Constr., Inc. v. Roy J. Hannaford Co.*, 818 P.2d 469, 470 (Okla. 1991). Oklahoma applies the discovery rule to negligence claims of this type. *See Harper-Turner Oil Co. v. Bridge*, 311 P.2d 947, 950 (Okla. 1957); *Ponca Tribe of Indians of Okla. v. Cont'l Carbon Co.*, No. CIV-05-445-C, 2008 WL 11338469, at *4 (W.D. Okla. Nov. 21, 2008); *Bryer v. ConocoPhillips, Co.*, No. CIV-15-1218-HE, 2017 WL 5203043, at *2 (W.D. Okla. May 9, 2017). This rule "tolls the statute of limitations until an injured party knows of, or *in the exercise of reasonable* diligence, should have known of or discovered the injury, and resulting cause of action." *Lovelace v. Keohane*, 831 P.2d 624, 629 (Okla. 1992).

Defendant contends that "[m]any Clifford Farms residents became publicly aware of concerns with the neighborhood water in 2010" when "[t]he first complaint about well water was filed with the OCC" and the Homeowners Association ("HOA") meeting minutes reflected that the OCC was "sampling water at problem sites to determine if the problems [were] the result of past oil/gas wells or production." Def.'s Mot. at 52 (emphasis omitted) (citing *id.* ¶ 13). Defendant then contends that "many others" were put on notice of potential water contamination by 2012, when the OCC offered to test Clifford Farms water wells. *See id.*; *see also id.* ¶¶ 17, 20-25. In support, Defendant presents an email in which the HOA informed certain residents that the OCC would like to test the Clifford Farms water for baseline water quality. *See id.* ¶ 20 (citing Doc. No. 131-29).

Defendant's vague reference to "many" Plaintiffs is insufficient for purposes of determining the tolling period for each individual Plaintiff. And the Court finds that Plaintiffs have presented evidence creating a genuine dispute of fact as to whether they knew or should have known, based upon the cited representations, that contamination had resulted in injuries to their land. *See* Pls.' Resp. ¶¶ 17, 20-25. Because genuine issues of fact exist as to when each Plaintiff knew or reasonably should have known of damages to their land, summary judgment is inappropriate on Defendant's statute of limitations defense to Plaintiffs' negligence claims.

### III. *Unjust Enrichment*

Defendant argues that it is entitled to summary judgment on Plaintiff's claim for unjust enrichment because (1) Plaintiffs have adequate remedies at law in their claims for nuisance and negligence, (2) the undisputed facts do not support a claim for unjust

16

enrichment, and (3) the statute of limitations has run. *See* Def.'s Mot. at 54-56.

Regarding Defendant's first argument, Plaintiffs object that they may pursue their unjust enrichment claim as an alternative theory of recovery under Oklahoma and Tenth Circuit law. *See* Pls.' Resp. at 54-55. The Court agrees that Oklahoma law permits plaintiffs to pursue both legal and equitable alternative claims, provided that plaintiffs do not receive double recovery for the same injury. *See Burlington N. & Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1029-30 (10th Cir. 2007) (citing *N.C. Corff P'ship*, 929 P.2d at 295).

As to Defendant's second argument, Defendant asserts that Plaintiffs have "no evidence" establishing the elements of an unjust enrichment claim, which include that there be an enrichment to another, coupled with a resulting injustice. *See* Def.'s Mot. at 54-55 (citing *City of Tulsa v. Bank of Okla., N.A.*, 280 P.3d 314, 319 (Okla. 2011)); Def.'s Reply at 26. Specifically, Defendant contends that Plaintiffs have no evidence that Defendant has a legal duty to provide Plaintiffs with city water or that Plaintiffs expended money on city water as a direct consequence of Defendant's actions. *See* Def.'s Mot. at 55. Yet Plaintiffs have presented evidence and legal authority as to both these points. *See, e.g.*, Pls.' Resp. ¶ 14; *id.* at 50-51.

Finally, the Court finds that Defendant's argument that Plaintiffs' unjust enrichment claim is precluded by the two-year statute of limitations, *see* Def.'s Mot. at 54, should be denied for substantially the same reasons as those articulated in Section II(b).[6]

---

[6] In its Motion, Defendant additionally seeks summary judgment on the issue of injunctive relief. *See* Def.'s Mot at 56-57. Plaintiffs responded that they do not intend to seek injunctive relief at trial. *See* Pls.' Resp. at 56. This issue is therefore moot.

CONCLUSION

As outlined herein, Defendant's Motion for Partial Summary Judgment (Doc. No. 131) is GRANTED in part and DENIED in part. The Court grants summary judgment in favor of Defendant on Plaintiffs' private nuisance claims and Plaintiffs' negligence claims predicated on the duty to warn. The Motion is denied in all other respects.

IT IS SO ORDERED this 6th day of May, 2019.

*Charles B. Goodwin*
CHARLES B. GOODWIN
United States District Judge