## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

JAMES BLOCKER AND JAMI )
BLOCKER, husband and wife, et al., )
)
     Plaintiffs, )
)
v. )     **Case No. CIV-17-248-G**
)
CONOCOPHILLIPS COMPANY, )
)
     Defendant. )

## <u>ORDER</u>

Now before the Court is Defendant's Motion to Exclude and/or Limit the Expert Opinions and Testimony of Daniel Tormey (Doc. No. 119), filed by Defendant ConocoPhillips Company pursuant to Rules 403, 702, and 703 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579 (1993). In its motion, Defendant challenges the opinions and proposed testimony of geochemist Tormey regarding the geochemical characteristics of soil and groundwater at and under the Clifford Farms subdivision. Plaintiffs have filed a response (Doc. No. 149), and Defendant has replied (Doc. No. 162).

### BACKGROUND

This case involves the historic oil and gas operations of Defendant's predecessor, Continental Oil Company, in the 1930s through 1960s on land now constituting the Clifford Farms housing addition. Plaintiffs—current and former Clifford Farms homeowners—allege that Continental's operations resulted in the contamination of the soils and aquifer underlying Clifford Farms with elevated levels of chloride, sulfate, and

other constituents.  *See* Doc. No. 117 at 5-6 (incorporated by reference into Defendant's

Motion (Doc. No. 119) at 1).[1]

DISCUSSION

Defendant seeks to exclude or limit the opinions and testimony of geochemist

Daniel Tormey.  In his report, Tormey opined that the soils and groundwater of Clifford

Farms contain elevated levels of uranium and other constituents.  *See* Def.'s Mot. Ex. 1

(Doc. No. 119-1 (Tormey Report)) at 4-5.  Defendant challenges Tormey's opinions on the

bases of relevance, helpfulness to the factfinder, reliability, and prejudicial effect.  *See*

Def.'s Mot. at 1.[2]

Defendant specifically bases its request to exclude Tormey's opinions and proposed

testimony on the following points: (1) "Tormey admitted in his deposition that uranium

readings in the soil . . . are *lower* than national averages" yet opined that the soils contain

"elevated" levels of uranium and other constituents; (2) "Tormey did not perform a depth

study to test his hypothesis that levels of uranium increase with depth from the surface soils

down dozens or hundreds of feet below to the top of the Central Oklahoma Aquifer,"

rendering speculative his opinion to that effect; (3) "Tormey did not identify or utilize a

background range of uranium levels in the groundwaters of the Central Oklahoma

Aquifer," rendering unreliable his opinion that the groundwaters contain elevated levels of

---

[1] With the exception of deposition testimony, citations to page numbers herein use the
CM/ECF pagination.

[2] Defendant objects to Tormey's opinions regarding causation by separate motion.  *See*
Def.'s Mot. to Exclude the Expert Opinions and Testimony of Jim Artman, Steve Larson,
Jack Lawmaster and Daniel Tormey Regarding Causation (Doc. No. 122).

uranium; (4) "Tormey did not perform a historical study of oilfield activities" and should not, therefore, be allowed to opine on the issue of causation; (5) "Tormey concedes that all or most of the homes [in Clifford Farms] are now on city water, eliminating the risk of constituents in the groundwater," which renders irrelevant his opinion that concentrations of uranium in the groundwater present an unacceptable risk to human health and the environment." Def.'s Mot. at 2-3.

I.    *Whether Tormey's Opinions Should be Excluded under Rule 702*

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony at trial and imposes on the trial court a gatekeeper function to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 589. The Rule provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Under Rule 702, a court performs a two-step analysis to determine the admissibility of an expert opinion. *See 103 Inv'rs I, L.P. v. Square D Co.*, 470 F.3d 985, 990 (10th Cir. 2006). First, the court "must determine whether the expert is qualified by 'knowledge, skill, experience, training, or education' to render an opinion." *Id.* (quoting Fed. R. Evid. 702). Second, if the court finds that the expert is sufficiently qualified, "the

court must determine whether the expert's opinion is reliable" by assessing the underlying reasoning and methodology, as set forth in *Daubert*. *Id.*; *see Kumho Tire Co., LTD. v. Carmichael*, 526 U.S. 137, 147 (1999).

Reliability questions may concern the expert's "data, method, or his application of the method to the data." *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (en banc); *see Mitchell v. Gencorp Inc.*, 165 F.3d 778, 782 (10th Cir. 1999); Fed. R. Evid. 702(b)-(d). The Supreme Court has articulated the following non-exhaustive set of factors that courts may consider when evaluating reliability: (1) whether a theory or technique can be and has been tested; (2) whether a theory or technique has been subjected to peer review and publication; (3) whether there is a high known or potential rate of error with respect to a technique and whether there are standards controlling the technique's operation; and (4) whether the theory or technique enjoys general acceptance within a relevant scientific community. *Kumho Tire Co., Ltd.*, 526 U.S. at 149-50.

The Supreme Court has made clear, however, that the *Daubert* factors are "meant to be helpful, not definitive," and not all factors will necessarily apply in every case. *Id.* at 151; *see United States v. Bains*, 573 F.3d 979, 992 (10th Cir. 2009) (quoting *Kumho Tire Co., Ltd.*, 526 U.S. at 150-51). Rather, Courts have broad discretion in determining the admissibility of expert testimony, *see Taylor v. Cooper Tire & Rubber Co.*, 130 F.3d 1395, 1397 (10th Cir. 1997), and this discretion includes the manner in which the Court "assess[es] an expert's reliability, including what procedures to utilize in making that assessment," *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1223 (10th Cir. 2003) (citing *Kumho Tire Co., Ltd.*, 526 U.S. at 152; *United States v. Velarde*, 214 F.3d 1204, 1208-09 (10th

Cir. 2000)).   Thus, where the proposed testimony does not "rest[] upon scientific foundations," the court may determine that "the relevant reliability concerns [should] focus upon personal knowledge or experience." *Kumho Tire Co., Ltd.*, 526 U.S. at 150, 152 (explaining that courts should "consider the specific factors identified in *Daubert* where they are reasonable measures of the reliability of expert testimony").

The proponent of the expert testimony bears the burden of establishing its admissibility. *See Nacchio*, 555 F.3d at 1241.   "Under *Daubert*, any step that renders [the expert's] analysis unreliable . . . renders the expert's testimony inadmissible.  This is true whether the step completely changes a reliable methodology or merely misapplies that methodology." *Mitchell*, 165 F.3d at 782 (alteration in original) (internal quotation marks omitted).   In making a reliability determination, the court "generally . . . should focus on an expert's methodology rather than the conclusions it generates." *Dodge*, 328 F.3d at 1222.   Conclusions and methodology, however, "are not entirely distinct from one another." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).  While experts "commonly extrapolate from existing data," "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Id.* (explaining that exclusion under *Daubert* is appropriate where a court "conclude[s] that there is simply too great an analytical gap between the data and the opinion proffered").

As Tormey's qualifications are not in dispute, the Court accepts Tormey as qualified and proceeds to evaluate the reliability and relevance of his opinions.  As an initial matter,

the Court concludes that the record before it presents adequate material to make its determination, and an evidentiary hearing is therefore unnecessary.

Defendant contends that Tormey's opinions are not based on reliable principles and methods in two respects.  First, Defendant argues that Tormey's premise that uranium and other contaminants leach out of soils and migrate downward to groundwater is verifiable through testing but Tormey did not perform that testing.  Specifically, Defendant objects that this opinion is merely speculative, as Tormey did not perform a soil analysis at depths below two feet.  *See* Def.'s Mot. at 7.  Plaintiffs respond that Tormey's opinion is "consistent with his training and experience, as well as accepted scientific principles." Pls.' Resp. at 21-22; *see* Def.'s Mot. Ex. 1 at 4.

The Court concludes that Defendant's challenge regarding the speculative nature of Tormey's opinion implicates the weight and not the admissibility of the opinion.  While Defendant may be correct that additional testing would verify (or disprove) Tormey's extrapolation from scientific theory, Defendant does not attack the reliability of the underlying science on which Tormey based his opinion.  Nor has Defendant shown that Tormey's extrapolation was a modification of "otherwise well-established knowledge about regularly occurring phenomenon" such that "the importance of testing as a factor in determining reliability [would] be at its highest." *Bitler v. AO Smith Corp.*, 400 F.3d 1227, 1235-36 (2005).  In such case, "the burden is on [Defendant] through cross-examination to explore and expose any weaknesses in the underpinnings of the expert's opinion." *Herz Corp. v. Gaddis-Walker Elec., Inc.* 1997 WL 606800, at *3 (10th Cir. 1997); *see Compton v. Subaru of Am., Inc.*, 82 F.3d 1513, 1518 (10th Cir. 1996), *overruled on other grounds*

by *Kumho Tire*, 526 U.S. at 147; *Cook v. Rockwell Int'l Corp.*, 580 F. Supp. 2d 1071, 1085 (D. Colo. 2006) (gaps or inconsistencies in an expert's reasoning may concern the weight of the evidence and not its admissibility); *see also Daubert,* 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

Second, Defendant argues that Tormey did not independently examine whether Continental's activities were the cause of soil and water contamination in the relevant area and, therefore, should not be able to testify this is so.  Specifically, Defendant objects that Tormey should not be allowed to testify as to Defendant's role in creating elevated levels of uranium because Tormey did not personally perform a historical study of Continental's operations or the operations of any other oil company or pipeline on the property.  *See* Def.'s Mot. at 9.  Instead, Tormey "rel[ied] upon Plaintiffs' experts Tom Cook and Randall Grip."  *Id.*  According to Defendant, Tormey's reliance on data supplied by Plaintiff's other experts precludes Tormey from opining at trial on the issue of causation.  *See id.* at 9-10. Plaintiffs respond that Tormey's opinion as to causation was based upon reliable methodology and "multiple lines of evidence, including his literature review, historical aerial photographs, the data analysis, and mapping of various contaminants."  Pls.' Resp. at 18-19.

By separate order, the Court has considered the causation opinions addressed in Defendant's Motion to Exclude the Expert Opinions and Testimony of Jim Artman, Steve Larson, Jack Lawmaster and Daniel Tormey Regarding Causation (Doc. No. 122).  To the

extent, however, that the present argument is one of unreliable methodology, the Court does not find problematic Tormey's reliance on the data collected by Plaintiffs' other experts. Indeed, "[t]rained experts commonly extrapolate from existing data." *Joiner*, 522 U.S. at 146; *see* Fed. R. Evid. 702, Advisory Committee Notes to 2000 Amendment ("The term 'data' is intended to encompass the reliable opinions of other experts."); *see also* Fed. R. Evid. 703 ("An expert may base on opinion on facts or data in the case that the expert has been made aware of or personally observed."). Again, Plaintiff's concerns go to the weight of Tormey's opinions, not to their admissibility, and are more appropriately addressed by contemporaneous objection and cross-examination at trial. *See Smith v. BNSF Ry. Co.*, No. CIV-08-1203-D, 2011 WL 4054858, at *7 (W.D. Okla. Sept. 12, 2011) ("[T]he existence of inadequacies regarding the factual bases for an expert opinion go to the weight of the testimony rather than to its admissibility.").[3]

Finally, the Court finds that Tormey reliably applied the principles and methods discussed above to the facts of this case. In assessing the reliability of an expert's application of principles and methods to facts, the Court may consider a variety of factors, including whether the expert employed the same degree of intellectual rigor in formulating

---

[3] The Court notes, however, that while Tormey properly may rely on the opinions of other expert witnesses, his testimony should acknowledge that reliance and present a fair description of the opinions he references. Some of Tormey's statements in his report and testimony in his deposition appear to overstate other witnesses' findings and conclusions, particularly as regards the contention that Continental's activities were the original (and perhaps only) source of contamination to the water and soils underlying Clifford Farms. The Court finds that it will be better situated at trial to determine whether Tormey offers testimony that goes beyond proper reliance and will address objections, should they be made, at that time.

the opinion as he or she would be expected to employ in his or her own professional life; whether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion, creating an unjustifiably large gap between the analytical data and the opinion proffered; and whether the expert adequately accounted for obvious alternative explanations. *See Kumho Tire Co., Ltd.*, 526 U.S. at 152; *Joiner*, 522 U.S. at 146. Defendant does not expressly challenge in its Motion Tormey's application of principles to facts, except as already discussed above, and the Court, upon independent review of Tormey's report, has discovered no indication of the types of flaws in application contemplated in *Kumho Tire* or *Joiner*.

## II.   *Whether Tormey's Opinion Should Be Excluded Under Rule 403*

Defendant also raises several challenges to Tormey's proposed testimony that primarily implicate Rule 403 of the Federal Rules of Evidence. *See* Fed. R. Evid. 403 (providing that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence").

First, Defendant objects that Tormey's opinion that the soil at Clifford Farms contains "elevated" levels of uranium and other constituents, is misleading and would be confusing to the jury. *See id.* at 5-6; Def.'s Mot. Ex. 1 at 4; *see also* Fed. R. Evid. 403. Defendant specifically objects to Tormey's statement that uranium levels are "elevated" and almost "double" levels of "background" samples, when in fact "(1) . . . uranium [levels] in the soil on the Property [are] well *below* average levels found in soils across the United

States and (2) . . . neither [Tormey] nor the EPA view these levels as unhealthful, much less needful of remediation."  Def.'s Mot. at 5.  The crux of Defendant's argument is that Tormey's use of the term "elevated" in describing the level of uranium and other constituents in the soil is misleading and confusing as it falsely suggests that these levels were high in relation to national standards rather than merely in relation to the background soil samples taken from Clifford Farms.  Plaintiffs respond that Tormey's word choice can be explored and appropriately addressed in cross-examination and that any potential danger of confusing or misleading the jury or of unfair prejudice to Defendants does not substantially outweigh the probative value of the evidence such that the Court must exclude the evidence under Rule 403.  *See* Pls.' Resp. at 25.

The Court disagrees that a danger of confusion of the issues and misleading the jury substantially outweighs the probative value of the proposed testimony.  Such dangers generally arise when "circumstantial evidence would tend to sidetrack the jury into consideration of factual disputes only tangentially related to the facts at issue in the current case."  *United States v. Jordan*, 485 F.3d 1214, 1218 (10th Cir. 2007) (internal quotation marks omitted).  The comparison Tormey is making in referencing "elevated" levels of uranium in the soils at Clifford Farms, measured against local background levels, is relevant to a material factual dispute in this litigation, and any potential confusion would be too slight to substantially outweigh the comparison's probative value.  Defendant may clarify Tormey's use of the term "elevated," and what is being compared and what is not, through cross-examination.

Similarly, Defendant objects that Tormey's proposed testimony that the groundwater under Clifford Farms contains "elevated" levels of uranium is speculative, misleading, and confusing to the jury. *See* Def.'s Mot. at 7-9; *see* Def.'s Mot. Ex. 1 (Tormey Expert Report) at 4. Tormey testified that his use of the word "elevated" in this context was meant to signify the presence of uranium at a level in excess of objective standards, including drinking water standards. *See* Def.'s Mot. Ex. 2 (Doc. No. 119-2 (Tormey Dep.)) at 29:23-30:4; *see also* Def.'s Mot. at 7. Defendant argues that use of the term "elevated" in that way is inappropriate because (1) Tormey did not "identify background levels," (2) "numerous [United States Geological Survey] studies indicat[e] that about 1 out of 4 water wells in the aquifer have naturally occurring uranium levels in excess of federal drinking water standards," and (3) uranium levels vary in different places within the aquifer. Def.'s Mot. at 8-9.

The Court again finds that Tormey's description of "elevated" uranium levels does not present a risk of undue prejudice, confusion, or misleading the jury that substantially outweighs the evidence's probative value for substantially the same reasons as the Court articulated above. If Tormey uses the term "elevated" to make a comparison that Defendant perceives as ambiguous or inaccurate, Defendant may clarify the inaccuracy through cross-examination. *Daubert*, 509 U.S. at 596; *see also*, *Joseph*, 17 F.3d at 1284 (cautioning that exclusion of relevant evidence under Rule 403 "is an extraordinary remedy and should be used sparingly").

Finally, Defendant seeks the exclusion of Tormey's opinion that the level of uranium in the groundwater underlying Clifford Farms presents an unacceptable risk to

human health and the environment.  *See* Def.'s Mot. at 11-12.  Defendant contends that this opinion is irrelevant because "the vast majority of the homes in the neighborhood are now on public city water and . . . those homeowners are not at risk from groundwater so long as they do not come into contact with it."  *Id.* at 11-12.  The condition of Plaintiffs' properties absent connection to city water is plainly a material factual dispute in this case. Because Tormey's proposed testimony speaks to this issue, Defendant's objection is overruled.

CONCLUSION

For these reasons, Defendant's Motion to Exclude and/or Limit the Expert Opinions and Testimony of Daniel Tormey (Doc. No. 119) is DENIED.

IT IS SO ORDERED this 13th day of May, 2019.

CHARLES B. GOODWIN
United States District Judge